UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KELLY MARSEY,

      Plaintiff,                       CASE NO.: 4:20-CV-262-AW-MJF

v.

STATE BOARD OF ADMINISTRATION
of FLORIDA, and MAUREEN HAZEN, in
her individual capacity,

      Defendants,

_____/

## FIRST AMENDED COMPLAINT

Plaintiff, KELLY MARSEY, hereby sues Defendants, STATE BOARD OF

ADMINISTRATION of FLORIDA ("SBA"), and MAUREEN HAZEN ("Hazen"),

in her individual capacity, and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action brought under the Florida Civil Rights Act, Chapter

760, Fla. Stat. ("FCRA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e

*et seq.* (Title VII"), 29 U.S.C § 794 (Rehabilitation Act), the Americans with

Disabilities Act of 1990 ("ADA") and the Americans with Disabilities Act

Amendments of 2008 ("ADAAA"), the Florida Whistleblowers Act, §§ 112.3187

et. seq., Fla. Stat. ("FWA"), the Family and Medical Leave Act ("FMLA"), 29

U.S.C. § 2615 and 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United States Constitution.

2.      This Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, 29 U.S.C § 794 (Rehabilitation Act), the Americans with Disabilities Act of 1990 ("ADA") and the Americans with Disabilities Act Amendments of 2008 ("ADAAA"), the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, and 42 U.S.C. § 1983 (federal question). This Court has supplemental jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. § 1367. No reason exists for this Court to decline to exercise supplemental jurisdiction under subsection (c) of 28 U.S.C. § 1367.

3.      Venue is proper because all of the facts and allegations that form the basis of this Complaint occurred within the Northern District of Florida.

## **THE PARTIES**

4.      At all times pertinent hereto, Plaintiff, KELLY MARSEY, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class because of her gender (female) and due to her actual or perceived disability and because she engaged in protected speech on matters of great public concern. Additionally, Plaintiff reported Defendant's unlawful employment practices and qualifying misfeasance, malfeasance and/or the gross waste of public money and was retaliated against thereafter. Plaintiff is an "eligible employee" for

purposes of FMLA coverage because she was employed for at least 12 months by the employer and she provided at least 1,250 hours of service in the 12 months immediately preceding her need for leave.

5.     Defendant SBA is created by the Florida Constitution and is governed by a three-member Board of Trustees, including the Governor, the Chief Financial Officer, and the Attorney General. At all times pertinent to this action, Defendant SBA has been an "employer" as that term is used under the applicable laws identified above.

6.     Defendant Hazen is a resident of the State of Florida and at all times pertinent hereto has been an employee of Defendant SBA. Defendant Hazen is a duly licensed member of the Florida Bar.

**CONDITIONS PRECEDENT**

7.     Plaintiff has satisfied all conditions precedent to bringing this action in that she dual-filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunities Commission ("EEOC") related to the allegations of discrimination and retaliation under Title VII and Chapter 760, Florida Statutes (FCHR Case No. 202022677 and EEOC Case No. 15D202000405). Pursuant to the workshare agreement, FCHR conducted the investigation into these allegations of discrimination and retaliation. Additionally, Plaintiff filed the requisite charges of discrimination (FCHR Case No. 202023959

and FCHR Case No. 20202862) for the FWA claims with FCHR. Plaintiff received a Notice of Termination of Investigation for FCHR Case No. 202023959 and FCHR Case No. 20202862. A Notice of Determination on FCHR Case No. 202022677 was received after more than 180 days had passed since the filing of the charge, entitling Plaintiff to file this Civil Action. Plaintiff has requested a Notice of Right to Sue from the EEOC.

8.    Defendant SBA is not a "state agency" as defined in § 216.011, Florida Statutes, as it is not part of the executive branch of state government. As such, FCHR had no jurisdiction to investigate or issue a determination as to Plaintiff's whistleblower complaint.[1]

## STATEMENT OF FACTS

9.    The SBA is designed to be an apolitical organization that is required to invest assets and discharge its duties in accordance with Florida law and in compliance with fiduciary standards of care.

10.    The primary funds managed by the SBA are the Florida Retirement System Pension Plan, the Florida Retirement System Investment Plan, Florida PRIME, and the Florida Hurricane Catastrophe Fund.

---

[1] *See* SBA's Motion to Dismiss at FCHR, p. 2 as attached hereto.  SBA's new argument to the contrary in its Motion to Dismiss [D.E. 16] is at the very least disingenuous if not barred by the doctrine of judicial estoppel.

11.    The Performance and Risk Analytics ("PRA") section is responsible for the performance measurement of these primary funds, in addition to smaller mandates, cumulatively valued at approximately billions of dollars.

12.    PRA is within the larger Risk Management and Compliance ("RMC") group.

13.    RMC is supervised by Chief Risk and Compliance Officer ("CRCO"), Mindy "Sooni" Raymaker who reports directly to the agency head, Executive Director Ash Williams.

14.    Raymaker, an attorney licensed through the Florida Bar, does not have experience in, performance and risk measurement, or analytics.

15.    As CRCO, Raymaker supervises four directors, including Plaintiff, the Director of PRA since 2013.

16.    Plaintiff, Ms. Marsey, has earned a Bachelors of Science degree in Finance and a Masters of Business Administration.

17.    Additionally, Ms. Marsey holds a Certificate in Investment Performance Measurement ("CIPM") from the CFA Institute and a Certificate in Data Science via Coursera from Johns Hopkins University.

18.    Ms. Marsey has dedicated the majority of her career working in finance and analytics, including over a decade of experience working for Defendant in the PRA as an analyst, manager, and director.

19.     Plaintiff was responsible for the overall supervision of five employees, three of which were direct reports, including Derek Underwood, Carolina Ramirez, and Paul Kirkland.

20.     Ms. Ramirez supervised two Senior Performance and Risk Analysts, Rhonda Fowler and Georgia Gunn.

21.     During her employment at the SBA, Ms. Marsey was an exemplary employee and had never been counseled or disciplined and had always received very positive employment evaluations, including the most recent evaluation in July, 2019 issued by Raymaker.

22.     As Director of PRA, Ms. Marsey was expected to provide "oversight of the processes that ensure the accuracy of performance and risk analytics reports that are produced and distributed externally and internally."

23.     Prior to August 2019, Raymaker provided minimal guidance, assistance, direction, or oversight into PRA activities and had no involvement in the day-to-day, substantive operations of the PRA, including establishing controls and processes. Raymaker's interest in the PRA and its operations is best captured by her repeated comments that she would "rather gouge out my eyes than do this work."

24.     On or about August 7, 2019, Ms. Marsey reported to Raymaker a complaint of gender bias brought to her by her direct report, Carolina Ramirez.  On behalf of Ramirez, Ms. Marsey complained of an ongoing pattern of gender bias by

the SBA, disparate terms and conditions of employment, and differing standards applied to female managers. This was the most recent of several similar complaints of the SBA's systemic gender bias lodged by Ms. Marsey.

25. Ms. Ramirez complained to Ms. Marsey that Ramirez' subordinate, Rhonda Fowler, made a comment about having an "all-female" management team and indicating a preference for a more nurturing, i.e. feminine, management style.

26. Ms. Fowler was an employee with whom Ms. Ramirez was having substantial performance issues and who was unwilling or unable to make improvements.

27. Ms. Ramirez and Ms. Marsey had notified Raymaker, and Ms. Fowler, about these performance issues on multiple occasions to no avail. Prior to Ms. Marsey's complaint, Raymaker expressly approved and endorsed Ms. Marsey's management efforts to improve Fowler's performance to acceptable levels.

28. In compliance with Defendant's policies, Ms. Marsey reported to Raymaker the systemic gender bias that was occurring at the SBA, as reflected by Ms. Fowler, as she had observed and as reported to her by Ms. Ramirez.

29. Raymaker responded by laughing it off and doing nothing at all, which itself constituted a violation of SBA policy.

30. This response was consistent with Ms. Marsey's prior experience with Defendant's handling of complaints of gender discrimination and bias. For example,

in 2014, Ms. Marsey filed a formal complaint of unlawful employment practices against her then supervisor, Eric Nelson, a male, for his comments not to hire the best qualified applicant for an open position due to the applicant being pregnant. The SBA made it public knowledge that Ms. Marsey initiated a complaint against him. During the investigation, Nelson was allowed to remain in his position over Marsey and retaliate against her until he was permitted to retire. The SBA has cited Nelson as evidence that they do not tolerate discrimination, however, actively concealed his unlawful conduct by not preparing an Inspector General's report despite the IG having conducted an investigation, permitting him to clear out his desk after hours, publicly announcing his departure was due to retirement to SBA staff and the press. SBA Executive Director Ash Williams ordered Ms. Marsey not to discuss the true nature of Nelson's departure and she complied with the order despite being subject to repeated comments by other SBA management about her participation in the investigation. Between 2016 and 2018, Ms. Marsey complained to former CRCO Karen Chandler about ongoing gender bias at the SBA, including the disparate treatment of female managers, however nothing was done.

31.    Immediately following Marsey's reporting of discrimination, Raymaker began a campaign of retaliation against her. Raymaker began speaking to Marsey in sarcastic tones, mocking Mrs. Marsey publicly, criticizing her management ability, which had been highly rated only weeks before, and requiring

her to take management training. During one training class provided by the SBA in November 2019, the instructor taught attendees to provide clear, concise, consistent, and unambiguous feedback to subordinates. Despite also being in this training, Raymaker openly criticized and solicited complaints about Mrs. Marsey's management style, which style was consistent with SBA sponsored instruction.

32.    Raymaker demanded that Marsey acquiesce to the demands of Ms. Fowler in how she wanted to be supervised.

33.    Raymaker repeatedly spoke to Marsey with an increasingly raised voice, demanded she take management training and publicly humiliated Marsey in front of her subordinates.

34.    The retaliation and harassment became so severe, that Ms. Marsey was forced to take FMLA leave from August 19, 2019 through November 11, 2019.

35.    In contravention with prior SBA practices, Raymaker barred Marsey from all access to Defendant SBA, including her email, the network, and the building.

36.    Because of Raymaker's contravention of prior SBA practices, Marsey was unable to log in remotely and was forced to return to the office during her FMLA protected leave to have her work computer "scanned," under threat of having it reported as stolen.  In 2019, another Director reporting to Raymaker who did not report unlawful employment practices and was not perceived as disabled, took

FMLA leave and Raymaker permitted her to retain full access to the SBA computer network as was the common practice, and was not subjected to micromanagement, the redlining of routine emails, and the usurpation of her job duties and responsibilities upon return from leave.

37.    Raymaker assigned Ms. Ramirez all of Marsey's job duties while Marsey was out on FMLA protected leave.  However, Ramirez was unable to perform the duties without removing important checklists and controls Ms. Marsey had implemented, in some cases based on the recommendations following internal audits.

38.    On November 12, 2019, Marsey returned to work, expecting to step fully back into her role as Director of PRA with the same or substantially similar terms and conditions of her employment that she had prior to taking protected leave, without the need for accommodation.  Ramirez openly complained about having to do Marsey's work while she was on FMLA leave.

39.    Instead, it was clear that Raymaker believed or perceived Marsey to be unable to perform the essential functions of her job, and Marsey was told that Ramirez would continue to run the unit and Marsey was to adapt to Ramirez's "new system".

40.    Marsey learned that Raymaker authorized Ramirez to remove numerous controls designed to ensure the accuracy and timeliness of the FRS

pension data, but neither Raymaker nor Ramirez were able to identify what controls had been removed or modified.

41.    These controls are important in that they ensure the accuracy of the reported pension performance data *impacting billions of dollars of reported pension funds and tens of thousands of FRS Pension Fund participants,* and the same data which is used to calculate the incentive compensation bonuses for the SBA's eligible employees, including its Executive Director and Raymaker.  The removal of these controls and procedural safeguards left the performance data reporting open to error and intentional manipulation.  The removal of these controls was but the most recent in a series of SBA actions, whether by accident or design, that reduced accountability, transparency, and the accuracy of pension reporting data.  More specifically, including but not limited to: (1) SBA management demoted Raymaker's predecessor who highly valued accuracy and timeliness and replaced her with Raymaker who actively thwarted Marsey's efforts to produce accurate and timely reports, and (2) forcing out the former internal auditor who completed thorough and accurate audits and replacing her with another who conducted sham audits, letting the supervisor being audited decide what was to be included in the audit findings.

42.    Ms. Marsey was prevented from re-implementing controls without obtaining the approval of PRA subordinates, Ramirez, and Raymaker.  This

restriction was contrary to SBA policy, Marsey's position description, and the operations of the PRA prior to her complaint of gender bias and FMLA leave. In fact, at no point prior to Ms. Marsey's complaint had Raymaker ever been involved in the implementation or monitoring of controls intended to ensure the accuracy and timeliness of FRS performance data. The FRS pension performance data produced by PRA, that was now without the benefit of numerous controls implemented over the years, is publicly reported to demonstrate the performance of the FRS pension investments and to calculate incentive compensation bonuses for qualifying SBA executives, including the Executive Director.

43.    Marsey was subjected to an onslaught of retaliatory conduct including, but not limited to, micromanagement (including the redlining of routine emails), Raymaker requiring Ramirez, Marsey's subordinate, to review her work, Raymaker and Ramirez conducting secret meetings with PRA staff, including Marsey's direct reports to solicit complaints about her performance while they were under investigation as a result of Marsey's complaints, being repeatedly ostracized; being denied training, being stripped of her authority to modify, develop, or reinstate necessary controls designed to ensure the accuracy of performance reports; being excluded from decisions within her unit, being denied one-on-one meetings with Raymaker; and being denied a raise commensurate to her performance to which she was entitled to based upon her evaluation, comp ratio, time in position, and rated

competency, being forced to endure false allegations of poor communication, being forced to endure a meeting wherein Raymaker expressly endorsed Ramirez raising her voice at Marsey, calling her a liar, and complaining about her participation in an Inspector General Investigation, which constituted protected activity under federal and Florida law, and being portrayed in a misleading and incomplete Inspector General's report that painted her in a false light.

44.    On November 18, 2019, Marsey, through counsel, sent a letter to the SBA Inspector General outlining some of the unlawful employment practices she was subjected to, her concerns about the removal of controls used to ensure accuracy of FRS pension data, the misfeasance or malfeasance of Raymaker and Ramirez for the removal and lack of documentation of the removal of controls, and the material changes to the terms and conditions of her employment.    Shortly thereafter, Raymaker was advised she and Ramirez were under investigation by the Inspector General as a result of Marsey's complaint.    While under investigation by the IG, Raymaker and Ramirez tampered with the witnesses to Marsey's complaint by holding secret meetings with all PRA staff, including Marsey's direct reports and soliciting and contriving negative feedback about her.    When Ms. Marsey notified the Inspector General about the witness tampering and her concerns, he did nothing and omitted any reference to the tampering in the IG report.

45.     On December 3, 2019, Marsey filed her first charge of discrimination with the FCHR and the EEOC detailing the discrimination and retaliation she was receiving (FCHR Charge No. 202022677).

46.     On December 9, 2019, Maureen Hazen, General Counsel for Defendant SBA, issued a Board wide email stating in pertinent part, "As this memorandum relates to actual or potential litigation, the content and subject matter hereof must be kept confidential. You should only discuss this matter with Maureen M. Hazen [phone number omitted], unless otherwise authorized by Maureen." Defendant Hazen's memorandum related to Ms. Marsey's FCHR complaint filed against Defendant SBA.  Despite the attorney-ordered restrictions that prevented Marsey from speaking to other SBA employees about her claims, Raymaker and Ramirez failed to comply and instead, openly spoke about Marsey's complaint and performance during meetings with PRA staff.  Immediately after Hazen's letter, Marsey was further ostracized and SBA employees who would previously speak with her began to ignore her, and in some cases, walk in the opposite direction when they saw her.  Ms. Marsey curtailed her speech and refrained from speaking about her complaint as a result of Hazen's SBA-wide directive.

47.     Defendant Hazen is, or should be, aware that in this Circuit, orders to refrain from discussing ongoing administrative investigations constitutes an unconstitutional content-based restriction on speech. Her order otherwise, is an

infringement of Ms. Marsey's right to speech, here, to gather information from employees who may support her complaints against Defendant SBA. The content-based prior restraint of free speech constitutes a violation of clearly established law.

48.   Defendant Hazen should also be aware that her responsibility in a litigation hold is for the preservation of *documents* and *evidence*, not to censor content-based speech.

49.   An amendment to that charge of discrimination was filed with the FCHR and the EEOC on December 12, 2019 to include the discriminatory and retaliatory raise that was not commensurate with Ms. Marsey's prior raises, documented performance, her July 2019 performance evaluation, and was a significantly less percentage than PRA employees with documented performance deficiencies or who had been at the SBA less than one year. Notably, Fowler, against whom Ms. Marsey had complained, received a substantial raise despite her documented performance deficiencies.

50.   On December 16, 2019, Marsey filed her whistleblower charge of discrimination with the FCHR regarding her reporting of unlawful conduct and the retaliation she was suffering as a result (FCHR Charge No. 202022862).

51.   On December 20, 2019, Defendant Hazen attempted to cure her prior constitutional violation by sending a second memorandum modifying the language of her December 9, 2019 memorandum to state: "If you have any questions about

this litigation hold, please contact Maureen M. Hazen [phone number omitted]." She did not retract the prior order not to discuss Marsey's complaint.

52.     On January 10, 2020, Defendant SBA submitted its position statement in response to Marsey's charge of discrimination (FCHR Charge No. 202022677).

53.     On January 24, 2020, Marsey submitted to the FCHR her rebuttal to Defendant SBA's position statement, which was also provided directly to Defendant SBA via Assistant General Counsel, Liz Stevens.

54.     On January 27, 2020, the next business day after the SBA received Marsey's rebuttal position statement, Marsey was called to HR for a meeting with Raymaker and Dorothy Melton, the HR Manager who previously threatened to report Marsey's SBA laptop stolen, wherein Raymaker lodged false and inflammatory allegations against Marsey. Marsey contemporaneously complained that this meeting and the allegations stated were retaliatory, yet Defendant SBA did nothing to address those complaints.  More specifically, Melton, a designated point of contact for allegations of discrimination and retaliation, was required by SBA policy to memorialize Marsey's complaint of retaliation in writing and to forward it to the Inspector General for investigation, but she did not.

55.     On February 5, 2020, Marsey was terminated from employment with Defendant SBA.  She was forced to endure the humiliation of being escorted by HR Manager Melton through the PRA workspace and in front of her peers and

subordinates to clean out her office under guard.  Unlike Ms. Marsey, Nelson was not forced to perform a "perp walk" in front of SBA employees.  Additionally, the SBA miscalculated Marsey's leave, thus attempting to deprive her of benefits she was owed.

56.    Ms. Marsey amended her prior charges of discrimination with the FCHR and EEOC regarding her termination and filed an additional Whistleblower Charge of Discrimination for the termination (FCHR Charge No. 202023959).

57.    The actions Defendant took against Plaintiff were for no other reason than because of her complaints of systemic gender bias, Marsey's perceived disability, her complaints of matters of great public concern, her complaints of qualifying misfeasance, malfeasance, and/or the gross waste of public funds and in retaliation for her filing a complaint with the SBA Inspector General and charges of discrimination with the EEOC and FCHR and in violation of her FMLA rights.

58.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay her a fee for her services. Defendant should be made to pay said fee under the laws applicable to this action.

**COUNT I**
**VIOLATION OF FLORIDA CIVIL RIGHTS ACT OF 1992**
**FLORIDA STATUTES § 760.10**
**RETALIATION**
**(Defendant SBA)**

59.    Paragraphs 1-58 are re-alleged and incorporated herein by reference.

60.    Plaintiff engaged in protected activity by reporting discrimination and retaliation and is therefore a member of a protected class within the meaning of the applicable law.

61.    Defendant retaliated against Plaintiff in violation of the Florida Civil Rights Act of 1992 by changing the terms and conditions of her employment, denying her a raise commensurate with her performance, and terminating her employment.

62.    Plaintiff was retaliated against and terminated due to her protected activity.

63.    Plaintiff has suffered damages because of Defendant's actions.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(c)  enter judgment against Defendant reinstating Plaintiff to her position with Defendant.

## COUNT II
## VIOLATION OF TITLE VII
## 42 U.S.C. §§ 2000e *et seq.*
## RETALIATION
## (Defendant SBA)

64.    Paragraphs 1-58 are re-alleged and incorporated herein by reference.

65.    Plaintiff engaged in protected activity by reporting discrimination and retaliation and is therefore a member of a protected class within the meaning of the applicable law.

66.    Defendant retaliated against Plaintiff in violation of the Title VII of the Federal Civil Rights Act by changing the terms and conditions of her employment, denying her a raise commensurate with her performance, and terminating her employment.

67.    Plaintiff has suffered damages because of Defendant's actions.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(c)  enter judgment against Defendant reinstating Plaintiff to her position

with Defendant.

## COUNT III
## VIOLATION OF THE FLORIDA PUBLIC WHISTLEBLOWER ACT
## §§ 112.3187, et. seq. FLA. STAT.
## (Defendant SBA)

68.    Paragraphs 1-58 are incorporated herein by reference.

69.    This is an action against Defendant under §112.3187 et seq., Florida

Statutes.

70.    Plaintiff was a public employee protected under the provisions of

Chapter 112, Florida Statutes.

71.    As stated more specifically above, Plaintiff reported and disclosed

violations of rules, regulations, laws, misfeasance, malfeasance and the gross waste

of public funds to a person who had the authority to investigate, police, manage and

otherwise remedy the violations of rules, regulations and laws reported by Plaintiff.

Plaintiff reported acts specifically outlined in §112.3187(5), et seq., Florida Statutes.

72.    After providing information, as well as reporting these matters as

related more fully above, Plaintiff was the victim of retaliatory action resulting in

her termination.

73.    Under §112.3187(4), Defendant is prohibited from taking adverse

personnel action against persons who disclose the types of information disclosed by

Plaintiff.  Specifically, Defendant is prohibited from dismissing, disciplining or

otherwise taking any other adverse personnel action against an employee for disclosing information pursuant to the provisions of §112.3187(4), Florida Statutes. Under §112.3187(3)(c) "adverse personnel action" is defined as "the discharge, suspension, transfer or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or any other adverse action taken against an employee within the terms and conditions of employment by an agency or independent contractor."

74.    After making the disclosures identified in part above, Plaintiff suffered an adverse employment action, termination.

75.    Plaintiff maintains that the actions of all employees within Defendant who adversely affected her employment did so as retaliation for her "whistle blowing" activities.

76.    As a direct and proximate result of the actions taken against her by Defendant, Plaintiff has suffered injury, including but not limited to past and future wage losses, loss of benefits, stress, embarrassment, emotional damages and other tangible and pecuniary damages.  These damages have occurred in the past, are occurring at present and will occur in the future.

WHEREFORE, Plaintiff prays for the following relief:

    (a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to

the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(c)  enter judgment against Defendant reinstating Plaintiff to her position with Defendant.

(d) enter an order temporarily reinstating Plaintiff to her position pending resolution of this complaint

## COUNT IV
## DISABILITY DISCRIMINATION
## FLORIDA CIVIL RIGHTS ACT
## § 760.10, FLA. STAT.
## (Defendant SBA)

77.    Paragraphs 1-58 are hereby re-alleged and reincorporated as if set forth in full herein.

78.    This is an action against Defendant for disability discrimination brought under The Florida Civil Rights Act, 760.10, Florida Statutes.

79.    Plaintiff has been the victim of discrimination on the basis of her perceived disability.  Upon Plaintiff's return from approved FMLA leave, she was treated differently, subjected to a change in her authority, and the terms and conditions of her employment as the result of her perceived disability.

80.    Defendant is liable for the differential treatment which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

81.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is also entitled to equitable relief pursuant to the FCRA.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein,

(c)  enter judgment against Defendant reinstating Plaintiff to her position with Defendant.

**COUNT V**
**DISABILITY DISCRIMINATION**
**REHABILITATION ACT**
**29 U.S.C. § 794**
**(Defendant SBA)**

82.    Paragraphs 1-58 are hereby re-alleged and reincorporated as if set forth in full herein.

83.    This is an action against Defendant for disability discrimination brought under 29 U.S.C § 794 (Rehabilitation Act).

84.    Upon information and belief, Defendant receives federal financial assistance, or is in the process of receiving federal financial assistance, and did so at all material times hereto.

85.    Plaintiff has been the victim of discrimination on the basis of her perceived disability.  As a result, she was treated differently, subjected to a change in her authority, and the terms and conditions of her employment as the result of her perceived disability.  The disparate treatment was willful and malicious.

86.    Defendant is liable for the differential treatment which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

87.    Defendant knew, or should have known, of the discrimination that Plaintiff was receiving and deliberately failed to address the situation in any lawful way.

88.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is also entitled to equitable relief pursuant to the Rehab Act.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein,

(c) enter judgment against Defendant reinstating Plaintiff to her position with Defendant.

## COUNT VI
## DISABILITY DISCRIMINATION
## AMERICANS WITH DISABILITIES ACT OF 1990
## AMERICANS WITH DISABILITIES ACT AMENDMENTS OF 2008
## (Defendant SBA)

89.   Paragraphs 1-58 are hereby re-alleged and reincorporated as if set forth in full herein.

90.   This is an action against Defendant for disability discrimination brought for equitable relief only under the Americans with Disabilities Act of 1990 ("ADA") and the Americans with Disabilities Act Amendments of 2008 ("ADAAA").

91.   Plaintiff has been the victim of discrimination on the basis of her perceived disability.  As a result, she was treated differently, subjected to a change in her authority, and the terms and conditions of her employment as the result of her perceived disability.

92.   Defendant is liable for the differential treatment which adversely affected the terms and conditions of Plaintiff's employment with Defendant.  Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and

inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

93.     As a direct and proximate result of Defendant's conduct described above, Plaintiff entitled to equitable relief pursuant to the ADA/ADAAA.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant reinstating Plaintiff to her position with Defendant.

### COUNT VII- RETALIATION AND UNLAWFUL DISCRIMINATION AGAINST PLAINTIFF FOR EXERCISING HER FAMILY MEDICAL LEAVE ACT RIGHTS IN VIOLATION OF 29 U.S.C. § 2615 (Defendant SBA)

94.     Paragraphs 1-58 are re-alleged and incorporated herein by reference.

95.     The Defendant engaged in commerce or other industry or activity affecting commerce and employed fifty (50) or more employees for each working day during the twenty (20) or more calendar work weeks in the current or preceding calendar within seventy-five (75) miles of where Plaintiff was employed.  The Defendant is an employer under the Family Medical Leave Act ("FMLA").

96.    Plaintiff was an eligible employee under the FMLA to receive time off for a serious health condition or illness.

97.    Plaintiff notified defendants of her serious health condition or illness and the need to take leave under the FMLA.  Plaintiff engaged in protected activity when she requested and took leave to obtain care for her serious health condition or illness.

98.    Defendant SBA, retaliated against Plaintiff for requesting and taking leave she was entitled to take under the FMLA.  The Defendant's retaliation against Plaintiff included, but was not limited to, restricting Plaintiff's access to SBA facilities and networks, threatening to report her SBA issued laptop as stolen if she did not return to the office, altering Plaintiff's position without necessity and ultimately terminating Plaintiff from her position.

99.    Defendant knew and was aware that Plaintiff exercised the rights secured to her by the FMLA due to her serious health condition and her need for leave.

100.    Defendant took adverse action against Plaintiff in bad faith for exercising her rights under the FMLA in violation of 29 U.S.C. Section 2615.

101.    As a result of Defendant's willful violations of the FMLA, Plaintiff is entitled to equitable relief pursuant to the FMLA.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that process issue and this Court take jurisdiction over this case;

(b)  that this Court grant equitable relief against Defendant mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)  enter judgment against Defendant reinstating Plaintiff to her position with Defendant;

## COUNT VIII- VIOLATION OF THE FIRST AMENDMENT 42 U.S.C. § 1983 AGAINST MAUREEN HAZEN IN HER INDIVIDUAL CAPACITY

102.    Paragraphs 6 and 45-51 are re-alleged and incorporated herein by reference.

103.    This is an action against Defendant for violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.

104.    Defendant Hazen sought to restrict Plaintiff's constitutionally protected speech. This restriction constituted a content-based prior restraint of protected speech, in violation of clearly established law.

105.    Defendant Hazen's actions were "so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing."[2]

---

[2] *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010)(quoting *Lassiter*).

106.    Defendant Hazen demanded all employees of SBA, including Plaintiff, not to discuss Plaintiff's allegations of misconduct. The main thrust of the speech Defendant Hazen sought to restrict concerned matters of public concern, including but not limited to the unreliability of data used to publish FRS pension performance and the incentive compensation bonuses paid to eligible SBA executives, and Plaintiff's administrative investigation, as outlined above. As a result of Hazen's order, Marsey refrained from speaking about the issues described in part above. Had she not been subjected to Hazen's order, she would have spoken to other SBA employees in furtherance of her complaint(s).

107.    Upon information and belief, Marsey's termination, in violation of the First Amendment, was caused, induced, approved or ratified by Hazen in her position as SBA counsel.

108.    Defendant Hazen had no legitimate or countervailing interest in suppressing Plaintiff's content-based speech.

109.    Plaintiff is entitled to punitive damages against Defendant Hazen.

110.    Defendant Hazen acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

111.    Plaintiff suffered damages as the result of Defendant's actions.

WHEREFORE, Plaintiff prays for the following relief:

(a)  that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b)  enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein, including punitive damages;

## COUNT IX- VIOLATION OF THE FIRST AMENDMENT 42 U.S.C. § 1983
### (Defendant SBA)

112.   Paragraphs 1-58 are re-alleged and incorporated herein by reference.

113.   This is an action against Defendant for violation of the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.

114.   Defendant SBA sought to restrict Plaintiff's constitutionally protected speech through its General Counsel, Defendant Hazen, via letter to all employees, including Plaintiff, denying them the right to discuss matters related to Plaintiff's complaints. This constituted a content-based prior restriction of protected speech, in violation of clearly established law.

115.   Additionally, Defendant retaliated against Plaintiff for constitutionally protected speech, her report to the Office of the Inspector General. Plaintiff reported

matters which were of great public concern and was subsequently retaliated against, including her termination thereafter.

116.   It is the policy, custom, and practice of the SBA to engage in unconstitutional content-based prior restraints of protected First Amendment speech under the guise of "evidence preservation" and to retaliate against employees for exercising their protected First Amendment rights to disclose matters of great public concern to the Inspector General, FCHR/EEOC, or other agency.  The SBA's policy, custom, or practice was the driving force behind the unconstitutional conduct directed to Marsey and others.

117.   The retaliatory conduct that Defendant SBA engaged in is the type of actions that would deter a person of ordinary sensibilities from exercising his or her First Amendment Rights to free speech/expression.

118.   Defendant SBA had no legitimate or countervailing interest in suppressing Plaintiff's speech.  Discussion of Marsey's complaint was not the sort of disruption contemplated by *Pickering* sufficient to regulate a government employee's speech, as evidenced by Raymaker's and Ramirez's discussions of Marsey's complaint with PRA staff without ramification.   Indeed, Marsey's complaint to the IG of their witness tampering with staff to discuss her complaint while under investigation were ignored and their violation of Hazen's order resulted

in information used to contrive pretextual reasons to terminate Marsey's employment.

119. As a result of Defendant's conduct, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following relief:

(a) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(b) enter judgment against Defendant and for Plaintiff awarding all damages available to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, which is applicable to all counts:

(a) that process issue and this Court take jurisdiction over this case;

(b) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(c) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(d) awarding all damages available under law for each count enumerated herein; and

(e) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Respectfully Submitted,

By: */s/ Tiffany R. Cruz*
Tiffany R. Cruz, FBN 90986
**Friedman, Abrahamsen & Cruz**
403 East Park Avenue
Tallahassee, Florida 32301
850-681-3540
Tiffany@fa-lawyers.com
Paralegal@fa-lawyers.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been sent to all counsel of record through electronic service utilizing the Court's CM/ECF system this 4th day of August, 2020.

*/s/ Tiffany R. Cruz*
Tiffany R. Cruz